EMPIRE BOX CORPORATION, a corporation of the State of Delaware, Defendant Be'ow, Plaintiff-in-Error, v. JEFFERSON ISLAND SALT MINING COMPANY, a corporation of the State of Delaware, Plaintiff Below, Defendant-in-Error.

(*February* 22, 1943.)

HARRINGTON, Chancellor, RODNEY and SPEAKMAN, J. J., sitting.

*Hugh M. Morris* and *S. Samuel Arsht* for Empire Box Corporation, Defendant Below, Plaintiff-in-Error.

*James R. Morford* (of Marvel and Morford) for Jefferson Island Salt Mining Company, Plaintiff Below, Defendant-in-Error.

Supreme Court, No. 1, June Term, 1942, and No. 1, October Term, 1942.

THE CHANCELLOR:

The Jefferson Island Salt Mining Company, the defend-ant-in-error, claims that the record filed by the Empire Box Corporation, the plaintiff-in-error, is defective and will not

permit any consideration of the various questions sought to be raised by the assignments of error based thereon. The motion to dismiss these proceedings, and to strike out the record and the various assignments of error raises that question.

In the early days of the common law, the strict record in the trial court was of a very limited nature; it consisted of little, if any, more than the required writings, such as the pleadings, any rulings of the Court thereon, the process, the verdict and the judgment in the case. *Ownbey v. Morgan's Executors*, 7 Boyce 297, 105 A. 838; *Nalle v. Oyster*, 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439; 3 Ency. Pl. & Pr. 378; see, also, Woolley's Del. Pr., § 862. The mere spoken words of the Court, whether in charging the jury, in admitting or rejecting evidence, or otherwise, were not recorded, and could compose no part of its record, or of the record sent to the reviewing court on writ of error. id. Nor could the testimony of witnesses compose a part of the record sent up in obedience to the direction of that writ. *Ownbey v. Morgan's Executors, supra*. The strict record was all that could be sent to the upper court, and there was no redress by writ of error for an erroneous decision that did not appear in the lower court record. This defect in the English practice was remedied by the Statute of Westminster (13 Edw. 1, c. 31); under that statute, by means of exceptions taken, the various alleged incorrect rulings of the trial court and the essential facts pertaining thereto could be incorporated in the record and sent up on writ of error. By statute, a somewhat similar procedure has long existed in this State, and still exists in some cases. §§ 4896, 4898, Rev. Code 1935. Under their provisions, when exceptions are noted to adverse rulings, the strict record may be enlarged, and other pertinent matters, before the trial court, incorporated in it by means of a bill of exceptions; signed by the proper member of that Court before the adjournment of the term, or at some subsequent time fixed prior thereto. *Lupton v. Underwood,*

3 Boyce 519, 85 A. 965. But, in view of the fact that in modern practice a complete stenographic record of all matters before the trial court is usually taken, the signing of the bill of exceptions by that Court, for use in the reviewing court, is seldom of any real practical value. All of the material facts will appear in the transcript of the record taken at the trial. See Woolley's Del. Pr., § 684. Rule 20 was intended to change the old statutory practice (§ 4898, Rev. Code 1935) in most cases. It provides:

"In any case in which the testimony in the proceedings below has been taken stenographically the same, or any portion thereof, shall upon demand of the party be transcribed by the stenographer and a copy thereof, together with the exhibits in the cause, certified by the stenographer to be correct, shall, upon filing the same by such party, become a part of the record in the cause. * * * "

Under that rule and Rule 12 of the new rules, when the record has been taken down stenographically, it is only necessary for the plaintiff-in-error to direct the court stenographer to transcribe the desired portions; they are duly certified and filed by the Clerk in the Supreme Court as the record in the case, and no bill of exceptions need be signed. That procedure was followed in these cases.

In considering the effect of Rule 20 on Section 4898 of the Revised Code of 1935, two statutory provisions, enacted long prior to May 1st, 1942, must be considered:

(1) Section 4240 of the Code of 1935 authorized and empowered a majority of the State Judges, excluding the Chancellor, "to make and ordain from time to time rules, in term or in vacation, changing the forms and kinds of actions and proceedings" in the Supreme Court.

Section 4261 of the Code of 1935, also, expressly authorized and empowered the Supreme Court "to make rules

and orders for the trial, hearing and determination of causes and proceedings in said Court."

The first provision, among other things, authorizes the making of rules, changing the "proceedings" in the Supreme Court. The language of the latter provision is even broader. It authorizes rules for the "hearing and determination of causes and proceedings" in that Court.

Either Section 4240 or 4261 is sufficient authority for Rule 20. Bills of exceptions, signed by the trial court, are intended to complete the record to be filed in the Supreme Court, and that rule merely relates to the kind of record that will permit the latter court to consider any and all matters included in it, referred to in the assignments of error filed. Any such rule, made pursuant to statutory authority, supersedes any prior statutory provision; that is necessarily implied from the powers given. See *Weinberger v. Goldstein et al.*, 99 N. J. Eq. 1, 132 A. 659, affirmed 101 N. J. Eq. 310, 137 A. 920; 21 C. J. S.,Courts, §§ 170, 415, pp. 263, 677. Furthermore, Section 4240 of the Code expressly provides that any rule adopted pursuant to its terms "shall supersede all statutory provisions inconsistent therewith." As Rule 20 is merely of a procedural nature, intended to simplify a prior established practice, with respect to the record to be used in the reviewing court, no fundamental constitutional or other substantive rights are in any way affected thereby. 12 Amer. Jur. 279; 16 C. J. S., Constitutional Law, §§ 259, 261, pp. 680, 682. In the absence of a clear contrary intent, rules of court are usually held to operate prospectively only. 21 C. J. S., Courts, § 177, p. 281; 18 Ency. Pl. & Pr. 1259; *Rose v. Meyer*, 370 Ill. 166, 18 N. E. 2d 184. But there are no vested rights in the continuance of a particular mode of procedure required in the reviewing court when a suit is brought, and a judgment entered in the trial court. See 16 C. J. S., Constitutional Law, §§ 259, 261, 272, pp. 680, 682, 692; 12 Amer. Jur. 279. Moreover, Rule 73 of the new Rules of Court expressly provides:

"The foregoing rule shall be in effect on and after the first day of May 1942 and shall be applicable to all causes then pending and thereafter brought; * * *"

The fact that Rule 20 was made effective, in express terms, on May 1st, 1942, while the judgment attacked was entered on April 26th, is therefore, unimportant. *State v. Faircloth*, 34 N. Mex. 61, 277 P. 30; 16 C. J. S., Constitutional Law, § 259, p. 680.

The same principle applies if that rule did not take effect until a later date. But the real important question is whether Rule 20 was effective either on May 1st or June 16th, 1942. Ordinarily, fairness to the Bar and to litigants, represented by its members, seems to require some reasonable action, tending to give notice of the adoption of Rules of Court; some reasonable publicity when they are put into effect, so as to prevent surprise and possible injury in applying them. 21 C. J. S., Courts, § 173, p. 275; 18 Ency. Pl. & Pr. 1259. In that respect, they usually differ from statutes, duly enacted and approved, which require no action in the nature of promulgation to make them effective. In support of its motion, the defendant-in-error stresses that general rule, and claims that, in any aspect of the case, Rule 20 never became effective, either by action of the Judges, in vacation, or by this Court, and cannot be relied on by the plaintiff-in-error. Particularly in view of the nature and purpose of the rule, we are unable to agree with that contention.

In many jurisdictions, in order for any rule made to become effective, it must be spread on the court records, *Harris v. Nelson*, 331 Ill. 225, 162 N. E. 833; *Lyczak v. Margulies*, 151 A. 64, 8 N. J. Misc. 549, affirmed 109 N. J. L. 352, 162 A. 590; 21 C. J. S., Courts, § 173, p. 275; 18 Ency. Pl. & Pr. 1250. That is not only regarded as conclusive evidence of its provisions, but a record from which notice may, perhaps, be ultimately implied if no other steps to that end are

taken. But, in practice, a more liberal rule has been applied in this State. Whatever the old procedure may have been, certainly in recent years Rules of Court, though relating to matters of substance, and not to mere formalities, have seldom been entered on the Court records. When made, they are usually handed to the Clerk with the direction that they be printed and copies be made available to the members of the Bar. They are, also, inserted in the printed rule book in the Clerk's office, which is accessible to the Bar.

The first writ of error on the judgment of April 26th was issued May 22nd, 1942, and the second writ on June 22nd of the same year. If Rule 20 were effective on either of these dates, both writs and the proceedings thereunder cannot be dismissed. The new Rules of Court, including that rule, were made and signed by all of the Judges in vacation. See 21 C. J. S., Courts, § 173, p. 275. They were, also, signed by the Chancellor; but that is unimportant in determining whether Rule 20 was effective under Section 4240 of the Code. No further action was taken until June 16th, 1942, and the defendant-in-error, therefore, claims that it was not effective under that section of the statute.

The Supreme Court was in session on June 16th, and before it had formally convened a printed copy of the Rules, which had been approved by all of the Judges and the Chancellor, was handed to the Clerk by the Judge who had acted as Secretary for the whole group in considering and approving them. No other and more formal action was taken either by the Law Judges or by the Court; nor was further action necessary to make Rule 20 effective under either, or both, Section 4240 or Section 4261 of the Code. Though the opportunities for knowledge of its provisions were more limited than in the usual case, the defendant-in-error could lose no real substantive rights by its application, whether it took effect May 1st, 1942 or not until June 16th of that year. This conclusion disposes of the motion to dismiss assignments of error 8 to 17, inclusive.

The motion of the Jefferson Island Salt Mining Company to strike out the nine remaining assignments of error filed is based on very different grounds. The first, second and eighteenth assignments were:

"(1) The trial court erred in entering judgment in favor of Jefferson Island Salt Mining Company and against Empire Box Corporation in the sum of $4,203.68, together with the costs of the cause."

"(2) The trial court erred in failing to enter judgment in favor of Empire Box Corporation with costs against Jefferson Island Salt Mining Company; or, in the alternative, in entering judgment in favor of Jefferson Island Salt Mining Company against Empire Box Corporation, in the amount of six cents (6c)."

"(18) The trial court erred in refusing to grant the motion of Empire Box Corporation for a non-suit, which motion was made at the close of Jefferson Island Salt Mining Company's case in chief."

Article IV, Section 12(1) of the Constitution of 1897 provides that the Supreme Court shall have jurisdiction:

"(1) To issue writs of error to the Superior Court and to determine finally all matters in error in the judgments and proceedings of said Superior Court."

Section 4896 of the Revised Code of 1935 provides:

"Upon the trial of any case on a judgment in which a writ of error will lie, either party, in order to place upon record any point of law arising in the course of the trial and material to the determination thereupon, may propose an exception upon such point of law; and the Chief Justice of the Court, or in his absence from the trial, the Justices present, shall sign a bill, if presented, truly stating such exception, with all matters requisite for understanding the same. The bill, so signed, shall be a part of the record, and the mat-

ter of law therein appearing shall be considered on a writ of error."

Furthermore, Section 4897 of the Code provides:

"Exception may be taken, as aforesaid, to the overruling of a challenge; to the admission, or rejection of a witness, or of any evidence; to the refusal of a demurrer to evidence; to the charge delivered to the jury; to a refusal to charge the jury upon a point of law duly made; or to the decision upon any point of law arising in the course of the trial and material to the determination thereupon, which decision will not otherwise appear by the record."

Under the old statutory practice, which was partially supplanted by Rule 20 of this Court, "upon the trial of any case on a judgment in which a writ of error will lie," any exception noted, bill signed and assignment of error filed could, therefore, only challenge the correctness of the rulings of the trial court on some question of law. See Woolley's Del. Pr., §§ 684, 685, 686 and 865; 4 C. J. S., Appeal and Error, § 1251, p. 1750. Furthermore, the exceptions provided for were not only confined to the trial, but only applied to the legal questions specified in the Act. § 4897, Rev. Code 1935, supra. The assignment of errors filed in the reviewing court is in the nature of a declaration (2 Tidd's Pr. 1225; 2 Paine & Duer's Pr. 472), and several errors in law may be relied on. 2 Tidd's Pr. 1226; 2 Paine & Duer's Pr. 472. Under the modern practice, perhaps, such assignments are usually required to be reasonably specific and informative. 4 C. J. S., Appeal and Error, § 1253, p. 1752; 3 Am. Jur. 287, 293.

Originally, when a bill of exceptions was signed and incorporated in the record, it seems that a general assignment of errors was sufficient. 2 *Paine & Duer's Pr.* 474; *Shepard v. Merrill*, 13 Johns., N. Y., 475; *Burtch v. Nickerson*, 17 Johns., N. Y., 217, 8 Am. Dec. 390. The apparent

theory was that the bill of exceptions supplied any lack of particularity in the assignment fi'ed. But a writ of error is not, necessarily, confined to cases embraced in Section 4897 of the Code. Independent of the Statute of Westminster, or any other statutory provisions, heretofore referred to, error may be assigned because of the insufficiency of the evidence to support the judgment entered by the trial court. Under the old practice, when it was intended to raise that question, perhaps, the error assigned might be, in substance, that the judgment was entered for the plaintiff below instead of for the defendant in that Court. 2 *Tidd's Pr.* 1226; 2 *Paine & Duer's Pr.* 472. But Rule 20 of the old Supreme Court Rules and Rule 9 of the new Rules both provide that the assignments of error filled "shall set out separately and particularly the matters in the court below, alleged and intended to be urged as error; * * *".

The first and second assignments of error do not comply with that rule. No reason is stated why the trial court committed an error in entering judgment in favor of Jefferson Island Salt Mining Company and against Empire Box Corporation for $4,203.68. Nor do they disclose how the trial court erred in failing to enter judgment in favor of Empire Box Corporation and against Jefferson Island Salt Mining Company or, in the alternative, in entering judgment in favor of the latter company for six cents (6c). The bare allegation that the court committed an error is not sufficient. The language used in these exceptions is too general, and, under the rule, cannot be aided by other assignments of error filed.

Furthermore, no exception can be taken, or error assigned, for failure of the trial court to grant a nonsuit. *Woolley's Del. Pr.*, §§ 678, 858; *Lewes Sand Co. v. Graves*, 1 Terry (40 Del.) 189, 8 A. 2d 21. In such cases, the judgment entered is merely interlocutory, and not final. *Elect. Research Products Co. v. Vitaphone Corp.*, 20 Del. Ch. 417, 171 A. 738.

Assignments of error 3, 4, 5 and 19 are:

"(3)  The trial court erred when it determined, in effect, that the cause of action pleaded was based upon an agreement between the parties entered into on March 11, 1940, which, in all respects, completely abrogated, superseded and rep!aced an earlier agreement between the parties entered into in May, 1939."

"(4)  The trial court erred when it refused to hold that the amended dec!aration was fatally repugnant in that it alleged a cause of action based upon an agreement entered into in May, 1939, which was modified on March 11, 1940, while, at the same time, in the same count, it alleged a cause of action based upon a so-called 'new agreement,' entered into on March 11, 1940, which, in all respects, completely abrogated, superseded and replaced the agreement of May, 1939."

"(5)  The trial court erred when it he'd that the proof in the cause established that on March 11, 1940, the parties entered into a 'new agreement' which, in all respects, completely abrogated, superseded and replaced an earlier agreement between them which had been entered into in May, 1939."

"(19)  If the Amended Declaration can be construed as alleging a cause of action based upon an agreement entered into in May, 1939, which was modified (but not completely abrogated and superseded) on March 11, 1940, then the Court erred in failing to find that Empire Box Corporation was discharged from further performance thereunder by reason of the refusal of Jefferson Is'and Salt Mining Company to pay for the cartons theretofore received by it, except upon conditions at variance with those provided for in the contract."

In the third and fourth assignments of error, the correctness of the rulings of the trial court on questions of pleading is, apparently, sought to be reviewed.  In the

third assignment, the Empire Box Corporation seeks to have this Court determine what cause of action was actually declared on by the plaintiff in the court below; whether that Court was correct in holding that the action was based on an agreement made between the parties on March 11, 1940, which completely abrogated an earlier agreement made in May of 1939. The proof on which the case was decided, and the final judgment entered, was apparently of that nature. In the fourth assignment, the plaintiff-in-error seeks to have this Court determine whether the lower court was correct in holding that the allegations of the amended declaration were not fatally repugnant. It alleges that the declaration was bad on that ground because it stated a cause of action, based on an agreement made in May of 1939, which was modified in March of 1940, while, at the same time, and in the same count, it alleged "a cause of action based upon a socalled 'new agreement'" made March 11, 1940, "which in all respects completely abrogated the agreement of May, 1939." Both of these questions were raised in the Superior Court on demurrer. The demurrer was overruled, and an interlocutory judgment entered accordingly. The materiality of these rulings is not denied; and, at common law, decisions on demurrer were a part of the court record, and, if material, could be reviewd on writ of error, issued on a final judgment. *Stephens on Pleading* (Hurd Ed.) 119; *Perry Common Law Pleading* 223, 234, 240; see, also, *Nalle v. Oyster,* 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439; Woolley's Del. Pr., § 855. The same rule applies here. The final judgment is being attacked, but the whole record is before this Court, and no statute or established practice requires an exception noted. As was pointed out by both *Stephens and Perry on Pleading* (pages 119 and 223 respectively) supra: "* * * whenever upon examination of the whole record right appears on the whole not to have been done, and judgment appears to have been given for one of the parties when it should have been given for the other, this will be error in

law. And it will be equally error whether the question was raised on demurrer" etc.

The writ is a remedy "resorted to for the purpose of some supposed error of law occurring in the trial or proceedings in the Court Below." Woolley's Del. Pr., § 855. Under our practice, on demurrer to a declaration, at the election of the losing party, a final judgment can be entered, and may be directly questioned on writ of error. Woolley's Del. Pr., §§ 459, 460, 856. Other methods of questioning the rulings of the court on demurrer might, also, have been adopted; but the one chosen by the plaintiff-in-error is entirely proper.

The fifth and nineteenth assignments of error are in the same category. The fifth seeks to question the legal sufficiency of the evidence to sustain the judgment of the trial court. The nineteenth alleges that even if the declaration stated a cause of action, based on an agreement made in May of 1939, which was modified by an agreement of March 11, 1940, the Court erred in failing to hold that the Empire Box Corporation was discharged from any further performance by reason of the failure of the Jefferson Island Salt Mining Company to pay for the cartons heretofore received by it except on conditions wholly at variance with the contract. The questions raised by these exceptions were, necessarily, determined by the trial court prior to the entry of the judgment questioned in these proceedings; but they were not determined in the course of the trial, and no exception is either required by the statute (§ 4897) or by any settled practice. Furthermore, there was no convenient time at which it could have been noted.

For the reasons heretofore given, the first, second and eighteenth assignments of error are dismissed. In all other

respects, the motion of the Jefferson Island Salt Mining Company is denied.