(No. 33333.—

GUSTAVE NEUBERG, Appellant, *vs.* HERMAN CLUTE *et al.*— (KARL RAAB *et al.*, Appellees.)

*Opinion filed May 20, 1955.*

GUSTAVE NEUBERG, of Chicago, *pro se,* (CHARLES D. SNEWIND, of counsel.)

Bartley, Powell & Skarzynski, of Chicago, (Harry F. Skarzynski, and Melvin B. Lewis, of counsel,) for appellees Karl Raab *et al.;* Frank Moland, of Chicago, for appellee Hazel K. Clute, Admx.

Mr. Justice Klingbiel delivered the opinion of the court:

Gustave Neuberg filed this suit in the circuit court of Cook County, seeking specific performance of a contract for the purchase of certain real estate from defendant Herman Clute. Karl Raab and his wife, Dorothy, subsequent purchasers of the premises, were also made defendants to the suit. The cause was referred to a master who, after hearing the evidence, found that the Raabs had no notice of the agreement between Neuberg and Clute, and recommended that the complaint be dismissed. Objections and exception to the report were overruled by the chancellor, and a decree was entered dismissing the complaint for want of equity. Plaintiff appeals directly to this court on the ground that a freehold is involved.

From the evidence it appears that on September 15, 1946, Clute had acquired by inheritance and purchase an 11/18 interest in the property in controversy, a two-story frame building with garage. The remaining interests were held by certain heirs of a deceased owner. On that date Clute entered into a written contract whereby he agreed to sell the property to the plaintiff, Neuberg, for the sum of $4500. Plaintiff paid $300 on execution of the contract, the balance to be paid within sixty days after title was found good or accepted by the purchaser. The contract contained a provision as follows: "It is understood and agreed that the seller will need considerable time to acquire outstanding interests of some adult heirs and that he may have to file a partition suit to acquire the interests of certain minor heirs and therefore the seller shall have time until July 15, 1947, to clear up the title so as to show

the entire fee simple title in himself." The plaintiff is an attorney who has practiced law for more than thirty years, and who also engages on his own behalf in selling, buying and holding real estate. He prepared the contract of sale and submitted it to Frank Moland, an attorney who represented Clute in the transaction. After the contract was executed, Clute, through his attorney, Moland, brought a partition suit against the owners of the other fractional interests in the property. At frequent intervals thereafter plaintiff inquired of Moland as to the progress of the partition suit, and informed Moland that he would await its termination. At no time did Clute or Moland advise plaintiff that the contract would not be performed.

In October, 1948, defendants Karl and Dorothy Raab, who for many years had resided in an adjacent building, moved into the premises in controversy where they rented an apartment from Clute. In February, 1949, when an attorney brought some prospective purchasers to the building for an inspection, the Raabs learned the property was to be sold at a master's sale pursuant to a decree of partition. They became concerned that they might be without a place to live, and called Clute, inquiring if they could bid at the sale. He assured them they could do so. After arranging for a loan of $2500 from one Joseph Krauser, a relative, they again called Clute, who agreed to advance them an additional $2000 and suggested they talk with his attorney, Moland. Accordingly, Raab communicated with Moland, and was advised the sale was set for March 7, 1949. The Raabs attended the sale, at which Moland and other bidders were also present. In accordance with an arrangement worked out by Moland he actually bid for the Raabs, although his bids were made in Clute's name in order to protect the latter's rights to security for the loan to the Raabs. The successful bid of $5000 was made by Moland in Clute's name and Clute was named as grantee in the master's deed. Two weeks later, on March 21,

1949, the purchase by the Raabs was reduced to writing in the form of two contracts. By the first contract Clute agreed to convey to Krauser at a price of $5000, payable $2500 in cash and the balance in monthly installments of $50 or more. The second contract was similar in terms, except that Krauser was the vendor and the Raabs were vendees, and the entire purchase price was payable in monthly installments of $50 or more. Thereafter the Raabs made their monthly payments directly to Clute, paid the taxes and other expenses, and collected the rents. They also made substantial expenditures for repairs and improvements on the property, of which only about $270, however, was spent prior to July, 1949.

In March, 1949, the plaintiff learned of the master's sale to Clute, and made inquiries of Moland in regard to closing his transaction. Moland subsequently informed him the property had been sold to a tenant. In May, 1949, plaintiff recorded his contract and in July of that year he went to the premises, where he met Mrs. Raab and told her of its existence.

The only disputed question of fact is whether or not the Raabs had notice of plaintiff's contract at the time they purchased the premises. Plaintiff testified his visit to Mrs. Raab occurred in March of 1948, while the Raabs testified the conversation did not take place until July of 1949. The defendants' version is supported by the corroborating testimony of Mr. Raab's mother and sister-in-law. The plaintiff's view, on the other hand, is contradicted by undisputed facts and circumstances in evidence. Thus plaintiff testified that in March, 1948, he discovered the master had held a sale in the partition suit and that in the following July he went out to talk to the Raabs. The master's sale was in fact held in March, 1949, and it must necessarily follow, therefore, that the conversation took place in that year. Plaintiff further testified that he was prompted to visit the premises when he noticed repairs being made

there. But the evidence is clear that the repairs were not made until March, 1949. In addition, both Clute and the Raabs testified that the latter first moved into the building in October of 1948, a time subsequent to the date plaintiff asserted he visited them there. The evidence amply supports the master's finding that neither the Raabs nor Krauser, at the time their contracts were executed, had any knowledge of plaintiff's claim to the property.

It is argued by plaintiff that Moland acted as agent of the Raabs at the master's sale, and that Moland's knowledge of plaintiff's contract constituted notice to them. The evidence fails to show he was an agent or attorney for the Raabs. They had never met him prior to the day of the sale, he was at no time expressly retained by them, and he made no charge to them for any services on their behalf. It is apparent that Moland attended the sale and prepared the subsequent contracts in the interest of his client, Clute, in order to protect the latter's security for the money advanced to the Raabs. The mere fact that Moland transmitted to the master the bids signified by the Raabs does not establish that he was their attorney. Even if Moland was the agent of the Raabs in the purchase of the property, however, they would still not be chargeable with notice through his knowledge of plaintiff's contract. Such knowledge was acquired by him while acting as attorney for Clute. He could not be expected to divulge information which would involve a breach of professional confidence. The rule charging a principal with the knowledge of his agent is subject to the qualification that the agent is at liberty to communicate his knowledge to his principal and that it is his duty to do so. It does not apply where at the time of receiving the notice the attorney was acting for another client whose interests were antagonistic. (*Morris* v. *Curtin,* 321 Ill. 462; *Mack* v. *McIntosh,* 181 Ill. 633.) Under the circumstances shown in the case at

bar, the Raabs cannot be chargeable with the knowledge possessed by Moland.

Plaintiff further invokes the rule that where the equities of two claimants are otherwise equal, the one who acquired his interest first has the superior right. We cannot agree, however, that in the case at bar the equities are equal. The evidence shows that after purchasing the property the Raabs made repairs and improvements thereon; that although plaintiff observed the improvements under way, he made no investigation until several months later; and that instead of promptly recording his contract plaintiff relied upon Clute and Moland to protect his interests. As between the plaintiff and the Raabs it seems clear that it is the former's conduct which is responsible for the situation in which the parties find themselves. Moreover, it is undisputed that Krauser, who advanced the sum of $2500 toward the purchase and who has an interest in the property to secure its repayment, had no notice of plaintiff's claim at any time prior to the filing of the present suit. The record contains no evidence of any actual or constructive notice to him of plaintiff's contract at the time of his transaction with Clute and the Raabs. Under the circumstances shown in this record, we think it would be inequitable to enforce specific performance of plaintiff's contract.

It is well established that specific performance is not a matter of right, even where the contract is clear and unambiguous, but the remedy in each instance rests in the sound discretion of the court to be determined from all the facts and circumstances. (*Edwards* v. *Brown,* 308 Ill. 350; *Mack* v. *McIntosh,* 181 Ill. 633.) A court of equity will not grant specific performance of a contract where it would be unconscionable to do so, or where its enforcement would be oppressive or inequitable, or where there is some substantial element in the case which moves the conscience

64

of the chancellor and makes it appear unjust to decree the relief sought. (*Kukulski* v. *Bolda,* 2 Ill. 2d. 11; *Favata* v. *Mercer,* 409 Ill. 271.) Even though the contract is valid at law and fairly entered into, yet if the evidence shows that the rights of innocent purchasers have intervened, or shows circumstances which appeal to the good conscience of the chancellor, specific performance will be withheld. *Morris* v. *Curtin,* 321 Ill. 462.

Under the circumstances shown by the evidence in this case the circuit court was warranted in dismissing the complaint for want of equity. We conclude, further, that there was no error or abuse of discretion in assessing the costs against the plaintiff and defendants equally. The decree will be affirmed.

*Decree affirmed.*